IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BLAINE MURPHY, | ) | Criminal Action No. 24-65 (MN) |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Benjamin L. Wallace, United States Attorney, Bryan C. Williamson, Assistant United States Attorney, Wilmington, DE – Attorneys for United States of America

John S. Malik, Wilmington, DE – Attorney for Blaine Murphy

October 1, 2026
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Before the Court is a motion by Defendant Blaine Murphy pursuant to Rule 11(d) of the Federal Rules of Criminal Procedure to withdraw his guilty plea ("the Motion"). (D.I. 46, 48). The Motion is opposed by the government and is fully briefed.[1] (D.I. 46, 48, 49, 50). For the following reasons, the Motion will be denied.

## I. BACKGROUND

On May 28, 2024, a federal grand jury returned an indictment charging Murphy with four counts of wire fraud, in violation of 18 U.S.C. § 1343, and four counts of false statements, in violation of 18 U.S.C. § 1014. (D.I. 2). The indictment describes a scheme in which Murphy submitted thirteen fraudulent applications for loans under the Paycheck Protection Program ("PPP"), a federal initiative under the Coronavirus Aid, Relief, and Economic Security Act that provided forgivable loans to business owners during the COVID-19 pandemic. (D.I. 2 ¶¶ 1, 5). In essence, the indictment states that Murphy made numerous intentionally false representations to obtain money from the federal government. (*Id.*).

On June 7, 2025, Murphy appeared in court for a change-of-plea hearing. There, he pled guilty to all eight counts in the indictment. (D.I. 47 ("Plea Tr.") at 25:5-8). Murphy's guilty plea followed what is known as a Rule 11 colloquy, where this Court asked Murphy questions to ensure that his plea was knowing and voluntary, among other things. After swearing to tell the truth, Murphy testified that he had received a copy of the indictment, had reviewed it with his counsel,

---

[1] There was no need to conduct an evidentiary hearing on this Motion because, as discussed in this opinion, Murphy's allegations in support of his Motion lack factual support, are contradicted by his responses during the Rule 11 colloquy, and are generally not sufficient grounds for withdrawal even if true. *See United States v. Thompson*, 48 F. App'x 24, 25 (3d Cir. 2002).

had discussed the charges with his counsel, and was fully satisfied with the representation and advice he received from counsel. (*Id.* at 4:1-2, 7:12-23).

In response to the Court's questions, Murphy explained that he had recently been under the care of a physician and a psychiatrist for anxiety and depression. (*Id.* at 5:1-8). He described these conditions as related to a loss in his life and the criminal case against him. (*Id.*). Murphy further explained that he was prescribed Xanax and Pristiq for these conditions, and he noted that he was currently under the influence of Pristiq but had not taken Xanax in the past twenty-four hours. (*Id.* at 5:11-15, 6:1-3, 6:21-25). Murphy nonetheless confirmed that he felt "confident" he understood what was happening and stated that "I'm in good mental health to make these decisions." (*Id.* at 5:22-24, 7:1-3). Murphy's defense counsel confirmed he had no reason to doubt his client's competency. (*Id.* at 7:4-6). At the hearing, this Court did not observe any signs that Murphy's judgment or cognition was impaired. This Court therefore found that Murphy was competent and capable of proceeding. (*Id.* at 7:9-11).

Discussion turned to the plea agreement that Murphy and the government had signed. The government summarized the contents of the plea agreement, which included that Murphy was agreeing to plead guilty to the eight counts in the indictment. (*Id.* at 9:14-13:25). Murphy testified that he had reviewed his plea agreement, had discussed it with counsel, was satisfied with the legal advice he had received with respect to the agreement, and had signed it. (*Id.* at 8:12-9:1). Murphy further testified that he understood the terms of the agreement, that no promises outside the written agreement were made, and that he was not threatened or forced to plead guilty. (*Id.* at 14:2-19). In response to the Court's question, "Are you pleading guilty of your own free will because you are, in fact, guilty?" Murphy responded, "I am, Your Honor." (*Id.* at 15:2-4).

The Court explained that by pleading guilty, Murphy would be waiving his opportunity to take the case to trial, where the government would have to prove each of the elements of the offenses charged beyond a reasonable doubt and a jury would have to unanimously agree on his guilt. (*Id.* at 21:2-12). Murphy responded that he understood. (*Id.*). The government then explained the facts that it would be prepared to prove at trial, including Murphy's scheme to obtain PPP loans via fraudulent statements. (*Id.* at 22:8-24:13). The Court asked, "Mr. Murphy, do you disagree with any of the government's factual representations?" (*Id.* at 24:22-23), to which he responded, "No, Your Honor." (*Id.* at 24:24). He then pleaded guilty. (*Id.* at 25:5-8).

On May 27, 2026, Murphy moved to withdraw his guilty plea. (D.I. 46). He amended and supplemented his filing on June 1, 2026. (D.I. 48). The Court now turns to the Motion.

## II. LEGAL STANDARD

"In order for a guilty plea to be valid, it must represent a voluntary and intelligent choice among the alternative courses of action open to the defendant." *United States v. Jones*, 336 F.3d 245, 253 (3d Cir. 2003) (cleaned up). "Once a court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim. Rather, . . . a defendant must have a 'fair and just reason' for withdrawing a plea of guilty." *Id.* at 252 (citations omitted); *see* Fed. R. Crim. P. 11(d) ("after the court accepts [a guilty] plea," the defendant must "show a fair and just reason for requesting the withdrawal"). "To determine if there has been such a showing, a district court must consider three factors . . . (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal. The burden of demonstrating those factors is substantial and falls on the defendant." *United States v. James*, 928 F.3d 247, 253 (3d Cir. 2019) (cleaned up; citation omitted).

## III. DISCUSSION

As explained below, Murphy has not carried his substantial burden to justify withdrawing his guilty plea.

### A. Whether the Defendant Credibly Asserts His Innocence

Any defendant can pay lip service to his innocence after a guilty plea. But that is far from sufficient to justify its withdrawal. A defendant must rather "present a *credible* claim of legal innocence" that is "buttressed by facts in the records that support a claimed defense." *James*, 928 F.3d at 255 (emphasis in original); *United States v. Brown*, 250 F.3d 811, 818 (3d Cir. 2001).

Murphy's primary defense is lack of criminal intent. Murphy argues that he followed the advice of loan officers, which included to provide "projections" in certain circumstances, in completing "confusing" PPP loan applications. (D.I. 48 at 3-4). Murphy also states that he terminated his long-term banking relationship with County Bank after "certain questions arose regarding his applications" – but before law enforcement was involved – and "either returned loan proceeds with interest to the bank, returned loan proceeds checks to the bank, or canceled pending loan applications." (*Id.*).

Murphy conspicuously does not address the specific facts alleged by the government. He does not deny that he submitted thirteen loan applications that falsely asserted (i) the number of employees who worked for Murphy's businesses, (ii) the average monthly payroll expenditures for his businesses, and (iii) that Murphy did not own any other business. (*See id.*; D.I. 2 ¶¶ 5, 13, 18, 23, 27). It is hard to see how any of this would have been particularly confusing to Murphy. And Murphy's vague suggestion that he simply obeyed loan officers' instructions to include "projections" is not based on any credible factual evidence.[2] Nor is Murphy's assertion that he

---

2 Murphy's Motion does not cite any evidence for this assertion. (*See* D.I. 48 at 3). Even if Murphy could mount credible evidence that his employee count and payroll numbers were

cancelled some applications and returned some funds prior to law enforcement involvement (yet after "certain questions arose") persuasive. (D.I. 48 at 4). These cancellations and returns, if they occurred, may reflect panic or regret rather than innocence.

In support of his innocence, Murphy's Motion references two exhibits. (*Id.* at 3-4). The first is a four-page letter written by Murphy. (*Id.*, Ex. A). The letter claims, among other things, that Murphy was rushed in his decision to plead guilty, that he had poor mental health at the time, that he received bad advice from counsel, that Murphy has identified another individual who will testify in his defense, that Murphy sent a PowerPoint presentation to the Department of Justice, that he could receive pardon from the Governor of Ohio, and that the lead FBI agent who oversaw his case is likely to retire. (*Id.*). But the letter only obliquely references Murphy's innocence, noting that "County Bank Internal Emails . . . will be used to rely on proof of innocence at trial if allowed" [sic]. (*Id.*). That is not persuasive.[3]

The second exhibit cited in the Motion is an email from Gary Richman on May 25, 2026. (D.I. 48, Ex. B). Richman purports to be a financial advisor who has known Murphy for around thirteen years. (*Id.*). Richman primarily relays his experience with applying for and receiving PPP loans from County Bank, which he describes as a confusing and misleading process.[4] (*Id.*). But

"projections," it is hard to understand how Murphy's certification that he did not own other businesses could rest on a projection.

3 Murphy does not explain how these emails would prove his innocence. The government provided what it believes are the emails at issue to the Court (D.I. 45, Ex. 1; D.I. 49, Ex. 5), and after this Court's review, it is unclear how these emails could constitute substantial evidence of Murphy's innocence.

4 Murphy also applied to receive PPP loans from County Bank. (D.I. 2 ¶¶ 14, 19, 24, 29). The government notes that even if the County Bank application process was confusing (and it is exceedingly difficult to see how it was with respect to the three categories of alleged false statements), Murphy also submitted fraudulent PPP loan applications containing fake tax forms to Bank of America nearly a month before he submitted his first application to

again, these broad assertions have little to do with the specific (and straightforward) fraudulent statements that the government has alleged here.[5]

Overall, Murphy has not credibly asserted his innocence. He fails to grapple with the particular fraudulent statements alleged by the government or set forth any evidence that could rebut the government's key assertions. Murphy's unequivocal admission of guilt before this Court – under oath and accompanied by a plea agreement he signed – is far more convincing than his protests now.

### B. The Strength of the Defendant's Reasons for Withdrawing the Plea

Now to Murphy's stated reasons for withdrawing his guilty plea. Murphy relies on his supposed diminished mental capacity at the time of his change of plea and other circumstances, including allegedly withheld documents and time pressure.

#### 1. Diminished Mental Capacity

In his Motion and letter, Murphy asserts that at the time of his guilty plea he was suffering from depression and grief. (D.I. 48 at 4-5, Ex. A). Murphy relies on the death of his long-time partner, his sibling's cancer diagnosis, years of alcohol abuse,[6] the stress of being subject to federal prosecution, and his mental health prescription drugs. (*Id.*). According to Murphy, these circumstances "negatively impacted his ability to make a knowing, intelligent, and voluntary decision concerning his guilty plea." (D.I. 48 at 5).

---

County Bank. (D.I. 49 at 6; Presentence Investigation Report ¶ 26). This indicates a pattern of fraud, not confusion. Murphy has nothing to say about this in his Motion or reply. (*See generally* D.I. 46, 48, 50).

[5] In any event, Richman's letter largely concerns confusion over the PPP loan forgiveness process, not with the applications for loans. (D.I. 48, Ex. B at 1-2).

[6] At the change-of-plea hearing, Murphy explained that he had "refrained from alcohol for the last year." (Plea Tr. at 6:7-9).

Murphy provided letters from his doctors. Dr. Cynthia Baum-Baicker wrote that around the time of his change of plea, Murphy was prescribed psychiatric medication and suffered from anxiety, dysthymia, agitation, alcohol dependence, Post Traumatic Stress Disorder, "Mixed Obsessional Thoughts and Acts," and "Major Depressive Disorder, recurrent severe without psychotic features." (D.I. 48, Ex. C). Dr. Baum-Baicker also wrote that "[t]he plea bargain was the easiest road ahead at a time when [Murphy] was low in energy" and that Murphy had expressed "buyer's remorse about the plea bargain" at a psychotherapy session on July 15, 2025. (*Id.*).

Dr. Leonard Lado's letter added that Murphy's psychiatric conditions "were severe, clinically significant, and of a nature that would reasonably be expected to affect a patient's subjective experience and cognitive performance during time-pressured decision-making." (D.I. 49, Ex. 8). Dr. Lado noted that the medications Murphy was prescribed "can further affect cognition, memory consolidation, and judgment, particularly in conditions of acute psychological stress." (*Id.*). Dr. Lado offered the caveat that he is "not in a position . . . to render a forensic legal opinion regarding his competency at any specific moment, [or the] voluntariness of any prior plea." (*Id.*).

Dr. Michael Forte Perry also submitted a letter in support of Murphy. (D.I. 48, Ex. C at 3). He purported to be a "character reference" for Murphy and stated that Murphy was suffering from "profound emotional distress" around the time of his change of plea. (*Id.*).

This Court acknowledges that Murphy appears to have suffered from mental health issues at the time he pled guilty. That, however, is not sufficient to justify withdrawal. Rather, the question is whether mental health issues were so debilitating that they overcame the defendant's ability to render a knowing and voluntary plea. *See Jones*, 336 F.3d at 253 (requiring a guilty plea to be "voluntary and intelligent"). That was not the case here. Neither Murphy nor his doctors

seriously contend that mental health issues or medications warped Murphy's cognitive function to such a degree that he could not understand the charges against him, the terms of the plea agreement, the consequences of a guilty plea, or otherwise what was happening.

Murphy's statements during the Rule 11 colloquy underscore that his guilty plea was an informed choice. Murphy testified that he had reviewed the charges in the indictment and the plea agreement with his counsel; that the prosecutor accurately summarized the terms of the agreement he reached with the government; and that he was mentally competent to make the decision to plead guilty. (Plea Tr. at 5:22-24, 7:1-3, 7:12-23, 8:19-22, 14:2-6). *See United States v. Flores*, 631 F. App'x 88, 90 (3d Cir. 2015) (explaining that a defendant's complaints that he felt "pressured" and feigned understanding during a Rule 11 colloquy "fail[ed] to raise genuine concern that his plea was either unknowingly or involuntarily made").

Of course, Murphy's decision to plead guilty was not made in a vacuum, free from internal struggles and external pressures. Many individuals – and doubtless many criminal defendants who have pled guilty – suffer from significant depression, grief, and pressure. But for good reason, this is not a sufficient basis for withdrawing a guilty plea. Because Murphy has failed to raise a genuine concern that his plea was unknowingly or involuntarily made, Murphy's assertions about his mental health and medications are not sufficient grounds to withdraw his guilty plea.

### 2. <u>Other Grounds for Withdrawing the Plea</u>

Murphy provides several other reasons for withdrawing his guilty plea. None are persuasive.

First, Murphy claims he was given only a short window of time to accept his plea bargain.[7] (D.I. 48 at 5). The government explains, however, that plea discussions began about a year before

[7] In particular, Murphy claims that he was under "duress" and that the government created a "sense of immediacy." (D.I. 48, Ex. A at 1). Murphy apparently only had "a day or so" to

the change-of-plea hearing, that Murphy was first provided with a draft plea agreement three months prior to the change-of-plea hearing, and that the communicated deadlines reflected when the government would begin preparing for trial (and thus would rescind its recommendation for a third-level acceptance of responsibility sentence reduction under U.S.S.G. § 3E1.1(b)). (D.I. 49 at 7-8). More importantly, at the change-of-plea hearing Murphy confirmed that he had read the plea agreement and discussed it with his counsel, listened to the prosecutor explain the terms of the plea agreement, agreed that the explanation "accurately reflect[ed]" his understanding of the agreement, certified that he had not been threatened or forced into entering the agreement, and did not raise any concerns when questioned by the Court. (Plea Tr. at 8:19-22, 14:2-19). Even if Murphy was rushed at some point, he was fully informed by the time of the change-of-plea hearing. This allegation is therefore without merit.[8]

Second, Murphy alleges that the government withheld "[i]nternal emails from County Bank staff and officers." (D.I. 48, Ex. A at 2). But Murphy relies on no evidence for this assertion, and the government has provided unrebutted evidence that it produced the emails in question. (D.I. 49, Exs. 4, 5). Murphy did not continue to press this issue in his reply brief. (*See* D.I. 50). This is thus unpersuasive.

---

decide whether to take the plea and was unable to get in contact with "my mental health professionals or Florida attorneys" (although he acknowledges he also had Delaware counsel) before making his decision. (*Id.*).

8 Murphy also claims he lacked time to review the Presentence Investigation Report, gather character letters, and review the government's sentencing memorandum. (D.I. 48, Ex. A at 2). As a threshold matter, this relates to sentencing – not Murphy's decision to plead guilty. In any event, Murphy has had ample time to review these materials, particularly because, due to defense-requested continuances, more than a year has elapsed since his guilty plea and sentencing has not yet taken place.

Third, Murphy complains that the government failed to appreciate a self-authored PowerPoint presentation he provided. (D.I. 49, Ex. A at 1-2). But the government was under no obligation to treat this presentation as persuasive.

Fourth, Murphy relies on the aforementioned email from Richman. (*Id.*, Ex. B). But as discussed above, this is not persuasive evidence of innocence.

Fifth, Murphy alleges that he received "conflicting" and "poor" advice from counsel, and he claims that he did not get certain documents from his counsel or received them on a delayed timeline. (*Id.*, Ex. A at 1-2). But at the change-of-plea hearing Murphy confirmed that he was fully satisfied with his counsel, had discussed the charges against him with counsel, and had reviewed the indictment and plea agreement with counsel. (Plea Tr. at 7:12-23, 8:7-9:1). This allegation thus also lacks merit.

Finally, Murphy explains that he hopes to obtain a gubernatorial pardon and that his sense of self-worth has grown. (D.I. 49, Ex. A at 3). These are not proper considerations for the Court.[9]

### C. <u>Whether the Government would be Prejudiced by the Withdrawal</u>

The Court need not reach the issue of prejudice to the government because Murphy has not asserted a credible claim of innocence or established "fair and just reason" to withdraw his plea. *Jones*, 336 F.3d at 255. For completeness, however, the Court will briefly address this issue.

Murphy pled guilty nearly a year before he moved to withdraw his plea. (D.I. 46, 47). Murphy has not been sentenced in the interim because he filed four motions to continue sentencing that the government did not oppose. (D.I. 34, 36, 38, 40). The government represents that due to this delay it will face "scattered witnesses, missing or incomplete evidence, and the subversion of its resource allocation." (D.I. 49 at 13).

---

9 The various other issues and circumstances Murphy alludes to in his letter are likewise unpersuasive. (D.I. 49, Ex. A).

These assertions from the government, standing alone, may not be enough to prevent Murphy from withdrawing his plea. But the Court takes the government's point. It is no trivial burden to prepare a case for trial that has laid dormant for a year. And it would be unwise to endorse a litigation strategy whereby defendants may withdraw guilty pleas on questionable grounds and then reap the benefits of a weakened prosecution. The finality of a guilty plea – particularly when accompanied by a robust Rule 11 colloquy that ensures the plea is voluntary, knowing, and considered – is integral to the federal criminal justice system.

## IV. CONCLUSION

Therefore, this Court will deny Muphy's motion to withdraw his guilty plea. An appropriate order will follow.